### REED et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. April 24, 1918.)

#### No. 215.

1. ARMY AND NAVY ⬡⟿38—"DESERTER"—"STRAGGLER."

Under the regulations of the Navy Department, a "deserter" is one who is absent without leave and with a manifest intention not to return, while a "straggler" is one absent without leave, with the probability that he does not intend to desert, but, if his absence continues for 10 days, he becomes a deserter.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Deserter.]

2. ARMY AND NAVY ⬡⟿40—PERSONATION OF OFFICER—EVIDENCE.

In a prosecution under Criminal Code, § 32, for falsely assuming and pretending to be officers of the Navy Department, evidence held sufficient to carry the case to the jury.

3. ARMY AND NAVY ⬡⟿40—PERSONATION OF OFFICER—OFFENSE.

Under Criminal Code, § 32, declaring that whoever, with intent to defraud either the United States or any person, shall falsely assume or pretend to be an officer, etc., shall be punished, defendants, who were detectives engaged in arresting naval deserters and stragglers for the reward prescribed by the regulations, must be deemed guilty of the offense denounced, where they represented to enlisted men arrested as stragglers that they were naval officers.

4. CRIMINAL LAW ⬡⟿1160—REVIEW—FINDING.

A finding by the jury as to the weight of the evidence, which was supported by the trial court in denying the application to set aside the verdict, is conclusive on the appellate court.

5. ARMY AND NAVY ⬡⟿40—OFFENSES—PRINCIPALS.

Where defendants, who were detectives engaged in apprehending naval stragglers and deserters for the rewards prescribed by the regulations, in pursuance of a common design, represented to enlisted men, arrested as stragglers, that one of the defendants was a naval captain, etc., each were principals.

⬡⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. WITNESSES ⊙=48(2)—COMPETENCY—CONVICTION.
    Conviction of a military offense by court-martial does not make a
witness incompetent to testify in the civil courts in a criminal prosecution.

Appeal from the District Court of the United States for the Southern
District of New York.

Harry A. Reed and James E. Eaton were convicted of violating
Criminal Code, § 32 (Comp. St. 1916, § 10196), by falsely assuming and
pretending to be officers acting under the authority of the United
States, and they appeal. Affirmed.

George W. Whiteside and Robert Oliver, both of New York City,
for appellants.

Francis G. Caffey, U. S. Atty., of New York City (Ralph W. Horne,
Asst. U. S. Atty., of New York City, of counsel), for the United States.·

Before WARD, HOUGH and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellants have been generally in-
dicted in five indictments, charged with violating section 32 of the
United States Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1095
[Comp. St. 1916, § 10196]), in that they falsely assumed and pretended
to be officers acting under the authority of the United States and a
department thereof, to wit, the Navy Department, and did take upon
themselves to act as such.

The misrepresentations and false assumption or pretension of office
was substantially the same in form, but occurred as to five different
arrests made of stragglers or deserters from the United States Navy,
and' five separate indictments have been returned; each charging a
specific violation involving a separate transaction on the date herein
mentioned. Both defendants were connected with the Hamilton De-
tective Agency of the city of New York in the month of August, 1917,
in charge of a department known as the "desertion department." Reed
was an inside man, and was known as "captain" in charge of this de-
partment, whereas Eaton was an outside man, engaged in apprehend-
ing deserters and stragglers. In the rooms of the detective agency
there were files marked "Captain," "Apprehension of Deserters," "Sent
for Stragglers," and on the door was the name "Captain Reed." In
the room were night sticks, revolvers, and handcuffs.

[1] It is provided, by a regulation for the government of the Navy,
that a reward not exceeding $50 be offered by a commanding officer
for the delivery of a deserter, and not exceeding $25 for the delivery
of a straggler, into the custody of the naval authorities at such place
and within such time as may be prescribed in general or specific in-
structions issued by the department's Bureau of Navigation, or, in the
case of a marine, by the commandant of the corps.

The appellants had a method of ascertaining what men of the Navy
were stragglers or deserters, and would then seek the apprehension of
such person and telegraph to the Bureau of Navigation of the depart-
ment, and ultimately deliver up to the department the person so appre-
hended and receive the reward. Under the regulations of the depart-

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ment, a deserter is one who is absent without leave and with a manifest intention not to return, while a straggler is one absent without leave with the probability that the person does not intend to desert, but, if his absence continued for a period of 10 days, he then becomes a deserter. In each case mentioned in each of the indictments, a member of the Navy so apprehended was brought to the detective agency's offices and there was introduced to or met Reed.

The first indictment dealt with an enlisted man, Harry Maxwell, of the United States Navy. He was arrested by Eaton, who represented that he was a skipper, a government man, and a Secret Service man. After being taken to the detective agency, he met Reed, who said he was a "captain from the Navy Yard."

The second indictment dealt with one Gunderman, an enlisted man in the Navy. On this occasion, Eaton represented himself as a "government detective," flashed a badge, and, when Gunderman was arrested and met Reed, the latter stated that he was a "captain in the Navy and entitled to four stripes."

The third indictment dealt with Roy Edward Davidson. Upon arrest, Eaton represented himself as a "federal officer in the government service and a lieutenant," and brought him before Reed. Reed represented himself as a "captain in the navy service" and "head of the Navy and Army Desertion Bureau."

The fourth indictment dealt with one Phillips, who was not an enlisted man, but who was wearing a naval uniform. At the time of the arrest, Eaton said he was a "federal officer," and, when brought before Reed, the latter stated that he was a "navy man," and directed the prisoner to stand up when he (Reed) spoke to him.

The fifth indictment dealt with the arrest of one King, an enlisted man in the Navy. Eaton, in making this arrest, represented himself as a "federal officer," and again Reed represented to the prisoner that he had been appointed a "captain of the federal government," and that he had had 16 years' service in the United States Navy.

[2, 3] The statute provides that:

"Whoever with intent to defraud either the United States or any person shall falsely assume or pretend to be an officer or employé acting under authority of the United States, or any department or any officer of the government thereof shall take upon himself to act as such or shall in such pretended character demand or obtain from any person or from the United States, or any department, or any officer of the government thereof, any money, paper, document, or other valuable thing shall be fined not more than one thousand dollars or imprisonment not more than three years or both."

The evidence clearly required the District Judge to submit to the jury the question of false assumption or pretension of being an officer or employé acting under the authority of the United States or any department or any officer of the government thereof. While it may be said that the defendants had the right to apprehend and arrest deserters and stragglers of the United States Navy, and were entitled to compensation by way of reward as provided by the regulations of the department, it is the false assumption and pretension to be an officer of the United States Navy or of the government, the false impersonation, that is the gist of the offense, not demanding or obtaining money. The

statute is intended as prohibiting any false assumption or pretension to be an officer or employé acting under the authority of the United States or any department or officer of the government, if done with an intent to defraud and accompanied by any specific acts on the part of the pretended character. United States v. Barnow, 239 U. S. 78, 36 Sup. Ct. 19, 60 L. Ed. 155.

The fraud was committed against the enlisted men, and consisted in telling these enlisted men of the Navy that Reed was a "captain of the Navy" and Eaton a "lieutenant" or other employé of the federal government. In United States v. Barnow, supra, Justice Pitney says:

"It is the aim of the section, not merely to protect innocent persons from actual loss through reliance upon false assumptions of federal authority, but to maintain the general good repute and dignity of the service itself."

In Littell v. United States, 169 Fed. 620, 95 C. C. A. 148, it was said:

"The gist of the offense is the false impersonation of an officer of the United States."

[4, 5] The jury's finding as to the weight of evidence was supported by the trial judge in denying the application to set aside the verdict. This finding is binding upon us. Nor is there variance between the proof and the indictment. The charge is fairly and concisely enough stated in the indictment. Each of the defendants took part in the arrest of each of the deserters or stragglers, and each committed an offense in this common undertaking, although their representations may have been made in different places and not at the same time. Under the law, all present at the time of the commitment of the offense are principals, although only one acts, if they are confederates engaged in a common design of which the offense is a part. The action of Reed was dependent upon Eaton's part in the arrest of the straggler or deserter, and so Eaton's actions are connected, in the commission of each offense, with Reed's. They were employed by the same agency, engaged in a common design and purpose. Reed acted in all cases in the presence of Eaton, assuming the rank of captain of the Navy. The offense is sufficiently proved as to each indictment.

[6] The testimony of Maxwell, Gunderman, and Davidson was properly received, as each was a competent witness, even though they had theretofore suffered conviction in court-martial proceedings. This did not disqualify them from being called as witnesses. Rosen v. United States, 237 Fed. 810, 151 C. C. A. 52; Pakas v. United States, 240 Fed. 350, 153 C. C. A. 276.

We can find no error in the admission or exclusion of evidence which requires a reversal.

Judgment of conviction affirmed.