UNITED STATES v. BALLARD.

(District Court, W. D. Missouri, W. D. November 17, 1902.)

No. 2,354.

1. CRIMINAL LAW—INDICTMENT—STATUTORY OFFENSE—DESCRIPTION.
  Where an offense is statutory, and is described in the statute, an in-
  dictment sufficiently describes the offense which follows the language
  of the statute, and describes in addition what was the act done con-
  stituting the offense.

2. SAME—IMPERSONATING UNITED STATES OFFICER—OBTAINING FRAUDULENT
  CREDIT.
  1 Supp. Rev. St. p. 425 [U. S. Comp. St. 1901, p. 3679], provides that
  "every person who with intent to defraud * * * falsely assumes
  * * * to be an officer or employé acting under the authority of the
  United States," and in such pretended character demands or obtains
  "any money * * * or other valuable thing, shall be deemed guilty,"
  etc. Held, that the statute covers the obtaining some valuable thing
  by means of the fraudulent standing or credit secured by holding one's
  self out as such officer.

3. SAME—DISJUNCTIVE PHRASES—INDICTMENT—EVIDENCE.
  1 Supp. Rev. St. p. 425 [U. S. Comp. St. 1901, p. 3679], provides that any
  person who shall "demand or obtain" any valuable thing under certain
  false pretenses shall be guilty, etc. An indictment in following the
  words of the statute alleged that the defendant "did demand and ob-
  tain" a certain thing of value. Held, that it was not necessary in order
  to sustain the indictment to prove that he both demanded "and" obtained.

4. SAME—VALUABLE THING.
  A month's lodging is a valuable thing, within the meaning of 1 Supp.
  Rev. St. p. 425 [U. S. Comp. St. 1901, p. 3679], providing against the ob-
  taining of any "valuable thing by impersonating" a United States officer.

Wm. Warner, U. S. Atty., and A. S. Van Valkenburgh, Asst. U. S.
Atty.
W. F. Riggs, for defendant.

PHILIPS, District Judge. The defendant was indicted for a viola-
tion of the act of April 18, 1884 (1 Supp. Rev. St. U. S. p. 425 [U. S.
Comp. St. 1901, p. 3679]), which reads as follows:

"That every person who with intent to defraud either the United States,
or any person, falsely assumes or pretends to be an officer or employé acting
under the authority of the United States, or any department or any officer
of the government thereof, and who shall take upon himself to act as such,
or who shall in such pretended character, demand or obtain from any person,
or from the United States, or any department or any officer of the government
thereof, any money, paper document, or other valuable thing, shall be deemed
guilty," etc.

The indictment contains two counts. The first count, omitting the
introductory statement, charges that the defendant "unlawfully and
feloniously, and with intent to defraud one Julia Eggeling, and divers
and sundry other persons to the grand jurors unknown, did falsely
assume and pretend to be an officer and employé acting under au-
thority of the United States, and the department of justice thereof,
to wit, as a deputy United States marshal, and in such pretended char-
acter did demand and obtain from said Julia Eggeling a thing of value,

¶ 1. See Indictment and Information, vol. 27, Cent. Dig. §§ 292, 293.

to wit, lodging at the house of the said Julia Eggeling, in apartments therein, to the amount and of the value of twenty dollars, contrary to the form of the statute," etc. The second count charges that the defendant, "with intent to defraud divers and sundry persons to the grand jurors unknown, unlawfully and feloniously did falsely assume and pretend to be an officer and employé, acting under the authority of the United States, and the department of justice thereof, to wit, as deputy United States marshal, and did take upon himself to act as such, contrary," etc. As the defendant was tried and convicted on the first count of the indictment, it is not necessary to consider the second count. Motions for new trial and in arrest of judgment have been filed by the defendant.

It is objected to the indictment, inter alia, that it does not sufficiently describe the offense. It is sufficient to say in respect of this objection that the offense is statutory, and where the statute itself describes the offense an indictment is good which follows the language of the statute, and, as in this case, describes what was the act done constitutive of the offense.

It is next objected that obtaining the use and rent of a lodging room is not a valuable thing, within the meaning of the statute; the contention being that the offense is in the nature of the common-law offense of "extorting" money or property, something tangible, from another person, under claim of authority to demand the same,—citing in support thereof the opinion of Judge Adams in U. S. v. Taylor (D. C.) 108 Fed. 621. This is an entire misconception of the opinion. What the learned judge ruled was that said section of the statute constitutes two substantive distinct offenses, the first offense denounced by the statute consisting in the use of the assumed position "for the purpose of extorting money or property from another." The court said: "The distinguishing feature of this first offense, in my opinion, is the making use of the assumed or pretended position for the purpose of falsely and wrongfully asserting a pretended claim of the United States, and thereby to defraud the person with whom he is dealing out of money or property." It was in respect of this offense that the term "extorting" was employed.

In respect of the second subdivision of the section, the court said it consists of "falsely impersonating an officer or employé of the United States, and in the pretended or assumed character demanding or obtaining either from the United States, or from some person, any money or valuable thing, with the intent to defraud. The elements of this offense, in my opinion, are more comprehensive, and do not limit the wrongful act to such as extorting money or property from another under the guise of asserting a claim due to the United States, which it is the duty of the offender in his pretended official character to assert, but includes the holding of one's self out as such officer or employé for the purpose, among other things, of giving him such credit or standing as will enable him to successfully demand or otherwise obtain money from another for his own private use and benefit, and with the intent to defraud."

Of course, the closing language of the court, to wit, "enable him to successfully demand or otherwise obtain money," was not intended

to limit the offense to the obtaining of money alone. The language must be restrained to the fitness of the subject-matter under discussion, which in that case was the obtaining of money. It was the joining in one count of the indictment the two separate offenses which the court held to be bad for duplicity.

It is to be observed that the language of the latter clause of the section is "demand or obtain" from any person. But the indictment in this case uses the terms "demand and obtain" conjunctively, for the obvious reason that an indictment which would charge the acts disjunctively would have been bad pleading. The rule requires the disjunctive expressions to be charged conjunctively, but it does not require, in order to sustain the indictment, that both things, to wit, demanding and obtaining, should be proven. It is sufficient if the evidence shows, as in this case, that the party, by reason of his false personation of a deputy United States marshal, obtained a thing of value.

The next contention in the motion in arrest is that the obtaining of the lodging room for a month is not a valuable thing, within the meaning of the statute. To this contention I cannot consent. It is true that criminal statutes are to be strictly construed in favor of personal liberty. But there is another rule equally as well established, and quite as wholesome, that, in construing remedial and protective statutes of this character, such construction should be given to them by the courts as is reasonably necessary to carry out and effectuate the legislative intent. It was doubtless well known to congress, as it is especially well known to the judges administering the criminal statutes of the United States, that the personating of United States officers, or the representing by irresponsible parties that they are in the employ of certain departments of the government, going through the country practicing the grossest frauds and impositions upon unsuspecting and unwary people, and under color of such false representations and pretensions obtaining money, credit, personal benefits, and assistance, had become so frequent as to constitute an intolerable abuse. It was to correct this abuse and to protect the community from these peripatetic and prowling imposters that this statute was enacted.

The term "or other valuable thing" is a comprehensive one. By common consent, it means and implies a thing of value or worth to the party who obtains it. It was not possible for congress in enacting the statute to anticipate all the devices and schemes which human knavery might conceive in securing benefits under the guise of an officer in the employ of the government, or under some authorized officer thereof, such as a United States marshal, whose very office, to the common people, carries with it sometimes great respect, and sometimes dread and apprehension. So that after specifying certain things, like money, paper, and documents, in order to cover the whole category of benefits which he might receive under such representations, the statute employed the comprehensive term, "or other valuable thing." The ordinary definition of the term "valuable" is "having value or worth; a thing of value." If this defendant had gone to this woman, and represented himself to be a deputy

United States marshal, and, as the evidence in this case shows he did, take along with him a woman claimed to be his wife, and apply for a night's or a week's lodging, with bed and board, stating that he would pay her therefor as soon as he received his expected pay as a deputy marshal, and in reliance upon the truth of his statement she had given him bed and lodging, and he had at her expense fed himself and his wife, slept in her beds, and enjoyed the protection and hospitality of her home, could it be said that he had not obtained something of value,—a thing of value? And if he had applied to her for the hire of a horse for a day, representing himself to be a deputy United States marshal, going to the country to execute the process of the United States, and that he would pay her therefor when he received his pay as a deputy marshal, and in reliance thereon she had let him have her horse, which he used, and it should turn out that he was not in fact such deputy marshal, and had not paid her, could it be said that he had not obtained something of value? What difference, in point of law and common sense, can it make that this woman, in reliance upon the truth of his false statements to her, let him have the use of a lodging room for himself and wife for a month, when such representation turned out to be false? Was not the lodging, the cover and protection of this woman's house, the use of her beds and furniture, a thing of value? As the evidence in this case shows, it was an income upon which Mrs. Eggeling depended for her livelihood, and as the means of paying her rent to her landlord for this house. And it certainly was of benefit and value to this defendant and his wife that he should find shelter while waiting, as he represented, for his pay from the marshal.

The contention of defendant's counsel that this was merely obtaining credit is simply sticking in the bark. He received, by his falsehood to Mrs. Eggeling, a present benefit—a thing of value to him— which he would not otherwise have obtained.

The discussion by the learned judge in State v. Thatcher, 35 N. J. Law, 453, is quite pertinent and satisfactory. The defendant was indicted under a statute which made it a crime to obtain by false pretenses "money, wares, merchandise, or other valuable thing." The defendant was indicted for inducing another to affix his signature as surety to a note upon the representation that other notes upon which he was surety had been paid. The court, inter alia, said:

"The prosecutor was moved to part with a thing of value. * * * The rule of strict interpretation for criminal statutes does not hinder the courts from searching for the legislative will; nor is the rule violated by giving words, in some cases, their full or the more extended of two meanings, as the wider popular, instead of the narrower technical, one. Cases are not wanting where some elasticity has been given to criminal statutes, in order to extend them to the mischief obviously aimed at. Thus a jail has been held to be an inhabited dwelling house within the statute respecting arson. * * * In this country the course of legislation on this subject shows an intention to bring within the reach of the statute every kind of property. * * * 'Valuable thing' is more comprehensive than 'valuable security.' Every valuable security is a valuable thing, but many valuable things are not valuable securities. Mere tangible things are not alone meant (by the statute), for the words prior to 'valuable thing' describe them. The legislature intended to denounce as a crime the obtaining by deceit of every valuable thing of a personal nature. 'Other valuable thing' includes every-

thing of value. * * * Under our humane system of criminal law, judicial ingenuity should not exhaust its resources to reach an interpretation in favor of wrong."

The evidence in this case quite clearly shows, and so the jury found under the charge of the court, that this defendant applied to Mrs. Eggeling for a room in her house for himself and his wife, in which they would do light housekeeping. He represented that he was a deputy United States marshal, engaged in active service in this locality. On the faith of that representation she let him have a room at $10 a month, to be paid for in advance. After having paid, perhaps, for two months or more of use, he defaulted. Thereupon Mrs. Eggeling demanded payment of the amount then due. He represented to her that he had not received his pay from the marshal, but was expecting it, and as soon as he got it he would pay her. Another month came round, no payment had been made, he defaulted again, and she let him remain longer on the faith of his representation that he would soon have his pay as a deputy marshal; and she distinctly testified that she would have ousted him upon his first default, but for the fact that she relied upon his representation, and supposed that he could not afford to falsely personate such an officer. It does not lie in his mouth, after thus lying to this woman, and enjoying the use of her lodging room and home, to now say that he did not receive a thing of value under color of his false assumption of the character of a deputy United States marshal.

There was other evidence in establishment of the quo animo, showing that at the same time and in the same locality he represented himself to others as a deputy United States marshal, and obtained credit thereby, even to the washing of his "dirty linen." While the result demonstrated that the transaction was not a thing of value to the washerwoman, it was a valuable service to him. I think the statute is broad enough to cover the case of such an imposter.

The motions for a new trial and in arrest are overruled.